IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FRANKIE D. WHITE,                       :
                                        :
    Plaintiff,                          :
                                        :
vs.                                     :
                                        :      CIVIL ACTION 12-0626-M
CAROLYN W. COLVIN,                      :
Commission of Social Security,[1]       :
                                        :
    Defendant.                          :


MEMORANDUM OPINION AND ORDER


In this action under 42 U.S.C. § 405(g), Plaintiff seeks judicial review of an adverse social security ruling which found that White was disabled and entitled to disability insurance benefits but only for a limited period of time (Docs. 1, 15). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 26).  Oral argument was waived in this action (Doc. 25).  Upon consideration of the administrative record and the memoranda of

---

[1]Carolyn W. Colvin became the Commissioner of Social Security on February 14, 2013.  Pursuant to Fed.R.Civ.P. 25(d), Colvin is substituted for Michael J. Astrue as Defendant in this action.  No further action needs to be taken as a result of this substitution.  42 U.S.C. § 405(g).

1

the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance."  *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the most recent administrative hearing, Plaintiff was forty years old, had completed a high school education (Tr. 75), and had previous work experience as a steel mill fabricator (Tr. 75).  In claiming benefits, White alleges disability due to hypertension, rotator cuff repair with restricted range of motion, and dystonia (Doc. 15 Fact Sheet).

The Plaintiff filed an application for disability benefits on November 10, 2008 (Tr. 183-86, *see also* Tr. 25).  Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that White was disabled and entitled to disability benefits between April 26, 2006 and August 20, 2007;

however, beginning August 21, 2007, Plaintiff's impairments had improved to the extent that he was capable of performing specific sedentary jobs existing in the national economy (Tr. 25-38). Plaintiff requested review of the hearing decision (Tr. 15) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, White alleges the single claim that the ALJ did not properly consider the conclusions of his treating physician (Doc. 15). Defendant has responded to—and denies—this claim (Doc. 21).

Plaintiff's only claim is that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of his treating physician. More specifically, White references the conclusions of Dr. Albert W. Pearsall (Doc. 15). The Court notes that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[2] *see also* 20 C.F.R. § 404.1527 (2013).

The Court notes that it will be unnecessary to summarize

---

[2]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

3

the entire medical record to address this claim.  There is a single item of evidence in controversy in this matter, a letter written by Orthopaedic surgeon, Dr. Albert W. Pearsall, on August 22, 2007.  Though lengthy, the Court will set out herein the entire contents of that letter:

> To Whom It May Concern:
>
> Mr. White is a 37-year-old male who was initially referred to me as a 36-year-old male who was involved in an accident, which was work related on April 26, 2006.  At that time he was trying to hold some fabrication material and the machine jackhammer was dropped and he felt pain in his right shoulder.  He attempted to go back to work that day, but had significant pain and discomfort.  He denies any problems prior to the injury and he states the shoulder was doing fine until that day.  Initially was noted to be a nondiabetic, nonsmoker, and stated upon his initial visit the symptoms have been going on for one month.  He was seen by an initial doctor and sent for physical therapy for three weeks for which he had minimal relief and he presented on initial May 22nd for evaluation.  At that time he had significant motion loss and we felt that he possibly had acromioclavicular joint inflammation versus subacromial impingement and rotator cuff tear.  We recommended physical therapy and a subacromial injection, which he had.  He subsequently had MRI, which was consistent with a rotator cuff tear.
>
> On October 10, 2006, Mr. White was taken to the operating room after failing conservative treatment.  At that time he was noted to have a rotator cuff tear, underwent arthroscopic rotator cuff repair.  He initially had difficulty with pain and

4

continued range of motion loss, but we continued with aggressive physical therapy. He was maintained off work during that initial postoperative period. Nearly five months after that surgery Mr. White continued to have pain and discomfort and a subsequent MRI showed evidence of a re-tear of the rotator cuff. He was taken back March 21, 2007 for mini-open repair, which was done. Since that time, he has continued extensive rehabilitation and continued to have some pain and discomfort, but appears to have reached maximum medical improvement. As a result of his plateauing with his treatment options, he was sent for a functional capacity evaluation at Industrial Wellness Center.

On August 7, 2007, Mr. White underwent a functional capacity evaluation. The result of that test indicated that his primary complaints were of the right shoulder and there were no noted inconsistencies during the evaluation. Evaluation at that time was an occasional lift bilaterally 25 pounds floor to knee, 25 pounds knee to waist, 20 pounds waist to shoulder, 15 pounds shoulder to overhead. Frequent lift bilaterally was 10 pounds floor to knee, 10 pounds knee to waist, 10 pounds waist to shoulder, and 5 pounds shoulder to overhead.

His maximum carry bilaterally was 25 pounds for 50 feet, left hand lift/carry was 50 pounds and right hand lift/carry was 10 pounds. Maximum push/pull on the surface was 70 pounds, maximum push/pull with wheels was 670 pounds, and maximum push/pull on the sled was 60 pounds. Also noted during FCE was that they would recommend limiting him to protected heights and avoid vertical ladder climbing. The summation of that functional capacity evaluation was that the patient demonstrated the ability to lift in the medium physical demand level of 25 pounds floor to waist level. They

5

recommended that he can return to light duty with a demonstrated performance if available and approved by his attending physician.

Mr. White returned for my final evaluation on August 20, 2007. At that time he underwent physical examination by me. His active motion was noted to be a forward flexion of 180 on the left, 120 on the right, active abduction was 180 on the left, 110 on the right, active internal rotation was T12 on the left and L1 on the right. His IGHE was 90 on the right and left. His ER at 0 was 65 on the left and 45 on the right. His ER at 90 was 90 on the left and 45 on the right and his IR at 90 was 90 on the left and 45 on the right. He had intact infrascinatus subscapularis testing as well as teres minor. He did have some weakness with suprascinatur testing, but was grossly intact. He has some minimal amount of atrophy over the supraspinatur, but he has well-healed portals. There is some palpable crepitus on evaluation. Previous radiographs did show well maintained acromiohumeral interval of greater than 7 mm and no evidence of significant glenohumeral joint arthritis.

Based upon Mr. White's plateauing of his therapy after his last surgical procedure, I have placed him at on [sic] maximum medical improvement on August 20, 2007. In addition, based upon the American Medical Association guide to evaluation of Permanent Impairment Fifth Edition for his forward flexion limitation I have given a 4% upper extremity impairment rating, for his abduction limitation I have given him a 3% upper extremity impairment rating, for his external rotation at 90 degrees motion loss I have given him a 1% upper extremity impairment rating, for his internal rotation at 90 degrees motion loss I have given him a 3% upper extremity impairment rating, for his muscle strength loss for supraspinatus testing I have given him a 4% upper

6

>   extremity impairment rating, and for atrophy I have given him a 1% upper extremity impairment rating.  This sums to a 16% upper extremity impairment rating, which translated to a 10% whole body impairment rating.  In addition, based upon the functional capacity evaluation I have determined that Mr. White should work in a predominantly medium physical demand level of 25 pounds floor to waist and should do minimal to no shoulder to overhead activities.  He could begin at four hours per day three days a week and if tolerating this activity could progress to full duty assuming that he has no symptoms.  His restrictions should also include no unprotected heights, no repetitive overhead activity, and no using ladders.  Any activity that requires squatting or bending that necessitated the extensive use of his right shoulder will also need to be regulated.
>
>   In conclusion, I believe Mr. White has reached maximum medical improvement on August 20, 2007.  Based upon his functional capacity evaluation I have recommended he return to work with restrictions as listed or be advised a possible cross training or re-education.  In addition, based upon his work-related injury I have given him a 16% right upper extremity impairment rating which translates to a 10% whole body impairment rating.

(Tr. 451-53).

White's claim arises from this letter wherein Dr. Pearsall indicated that Plaintiff could return to medium work, but only for four hours a day and three days a week to start (Doc. 15, p. 17).  The ALJ found, after reviewing all of the medical evidence and posing questions to a Vocational Expert, that Plaintiff

7

could return to specified sedentary jobs on a full-time basis (Tr. 25-38).

The Court finds no merit in White's claim. Though the ALJ found Plaintiff capable of working full-time, it was for sedentary work—and not even a full range of that—as opposed to medium level work as Pearsall had indicated. Yes, the ALJ would have White work longer hours and more days a week, but at a greatly reduced range of exertion. Plaintiff has pointed to no other deficiency in the ALJ's determination. As such, the Court finds substantial evidence to support the ALJ's conclusions.

White has raised a single claim in bringing this action. It is without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Judgment will be entered by separate Order.

DONE this 21st day of June, 2013.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE